UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

    - against -

JONATHAN P. FLOM,

             Defendants.
-------------------------------------------------------------X

**MEMORANDUM AND ORDER**
14-CR-507 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

    Defendant Jonathan Flom has been charged in connection with his alleged efforts to launder money that he believed to be the proceeds of securities fraud. Flom has moved to transfer venue to the Southern District of Florida. (Def. Mot. (Doc. No. 21).) For the reasons that follow, his motion is denied.

## BACKGROUND

    According to the indictment and background information submitted by the government in opposition to this motion, Flom is an attorney licensed to practice law in the state of Florida, and maintained a bank account that purported to be an attorney escrow account (the "Escrow Account"). (Indictment (Doc. No. 1) at ¶ 1; Mem. in Opp'n (Doc. No. 23) at 2-4.) In or around September 2013, an undercover law enforcement agent located in the Eastern District of New York contacted Flom in Florida by telephone to discuss an illegal scheme to sell counterfeit securities that had no monetary value to unwitting investors. (*Id.* at ¶ 2.)

    On or about September 26, 2013, Flom met with the undercover agent at a restaurant in West Palm Beach, Florida. (*Id.* at ¶ 3.) There, the undercover agent explained the scheme, whereby victim-investors would be instructed to wire money to the Escrow Account, Flom would keep a portion of the investors' money as a fee, and would then transfer the remainder of

the funds to the undercover agent in Queens, New York. (*Id.*) Flom agreed to participate, and stated that the undercover agent would be "shielded" by attorney-client privilege and that they needed to "stay loyal" to one another and "get their stories straight" if anyone began asking questions. (*Id.* at ¶ 3.) When the undercover agent stated that the securities being sold were fraudulent, Flom responded, "It doesn't bother me. I'm not one of those people who care what you do," and stated that the letters of his last name stood for "For Love of Money." (*Id.*)

On or about December 6, 2013, during another telephone conversation between Flom in Florida and the undercover agent in New York, the two discussed how the agent would be using a laser printer to create the fraudulent securities, and Flom confirmed that he could use his Escrow Account to receive money from investors who had purchased the securities. (*Id.* at ¶ 4.)

According to the government's proffer, in late December, Flom began receiving money in his escrow account he believed was from victim-investors. The money was, in fact, being sent to Flom's account by various FBI agents using covert bank accounts in Queens, New York. Flom would typically keep a portion of the money, and send the remainder to the undercover agent in Queens, New York.

On or about February 15, 2014, at a restaurant in West Palm Beach, Florida, the agent again told Flom that the securities were worthless even though they looked real. (*Id.* at ¶ 5.) Flom stated that he would direct investor complaints about the securities to the undercover agent, and further stated that he was willing to continue working with the undercover agent and had not been "scared away." (*Id.*)

Between December 30, 2013 and April 3, 2014, Flom received $141,300 in the Escrow Account and transferred $134,235 to the undercover agent in Queens, New York, keeping the rest as fees for the transactions. (*Id.* at ¶ 6.)

On September 22, 2014, an Eastern District grand jury returned a one-count indictment charging Flom with money laundering. That same day, the government filed a letter seeking to relate Flom's prosecution to another in this district also assigned to this Court, *United States v. Cecil Franklin Speight*, No. 14-CR-379 (RRM). [1] As the government proffers, Flom had a prior money laundering relationship with Speight, and the scheme involving Speight is related to the scheme with which Flom has been charged in the instant case. On September 23, 2014, the United States Securities and Exchange Commission ("SEC") filed a parallel civil action against Flom in the Eastern District of New York, which matter was stayed on consent of the parties on December 8, 2014. *See SEC v. Flom*, 14-CV-5575 (SLT).

## DISCUSSION

Federal Rule of Criminal Procedure ("Rule") 21(b) provides that "[u]pon the defendant's motion, the court may transfer the proceeding . . . against that defendant to another district for the convenience of the parties . . . and witnesses, and in the interest of justice."

As a general rule, criminal prosecutions should be retained in the district in which they were initially filed. *See United States v. Cournoyer*, No. 12-CR-65, 2012 WL 6539659, at *6 (E.D.N.Y. Dec. 14, 2012) (quoting *United States v. U.S. Steel Corp.*, 233 F. Supp. 154, 157 (S.D.N.Y. 1964)); *United States v. Estrada*, 880 F. Supp. 2d 478, 482 (S.D.N.Y. 2012); *United States v. Motz*, 652 F. Supp. 2d 284, 291 (E.D.N.Y. 2009); *United States v. Guastella*, 90 F. Supp. 2d 335, 342 (S.D.N.Y. 2000); *United States v. The Spy Factory*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997). The defendant therefore bears the burden of justifying a transfer under Rule 21(b). *See Cournoyer*, 2012 WL 6539659, at *6 (citing *United States v. Wilson*, No. 01-CR-53,

---

[1] That same day, the grand jury also returned an indictment charging James Schmidt, another Florida attorney, with money laundering. *See United States v. Schmidt*, 14-CR-506 (RRM). That prosecution, also assigned to this Court due to its relation to the *Speight* matter, involves the same facts and witnesses as Flom's case, and is proceeding to trial. No motion to change venue has been filed.

3

2001 WL 798018, at *1 (S.D.N.Y. July 13, 2001)); *Spy Factory*, 951 F. Supp. at 464. To meet this burden, a defendant must show more than just inconvenience to himself and his business – he must show that a trial in the district where the indictment was properly returned "would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome." *See U.S. Steel Corp.*, 233 F. Supp. at 157; *see also United States v. Conner*, No. 00-CR-731, 2001 WL 114314, at *3 (S.D.N.Y. Feb. 9, 2001); *Guastella*, 90 F. Supp. 2d at 340; *United States v. Antia*, No. 97-CR-733, 1999 WL 294788, at *2 (E.D.N.Y. Mar. 22, 1999); *United States v. Culoso*, 461 F. Supp. 128, 136 (S.D.N.Y. 1978).

I. *Platt* **Factors**

"Disposition of a Rule 21(b) motion is vested in the sound discretion of the district court." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990). In exercising that discretion, district courts are guided by the following non-exhaustive list of factors:

1) location of the defendant;
2) location of the witnesses;
3) location of the events likely to be at issue;
4) location of relevant documents and records;
5) potential for disruption of the defendant's business if transfer is denied;
6) expense to the parties;
7) location of counsel;
8) relative accessibility of the place of trial;
9) docket condition of each district; and
10) other special circumstances that might bear on the desirability of transfer.

*See Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243–44 (1964); *see also Maldonado-Rivera*, 922 F.2d at 966 (listing factors) (citing *Platt*, 376 U.S. at 243–44). No one factor is dispositive; rather, the court must try to strike a balance and determine which factors are most important. *See id.* (quoting *United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990)). In doing so, courts base their decisions on the "quality of factors not the quantity of factors favoring one party." *Antia*, 1999 WL 294788, at *1 (citing *Spy Factory*, 951 F. Supp. at 455). Courts in

4

this Circuit have considered the effect of transfer on both parties. *See Stephenson*, 895 F.2d at 875 (taking into account the residences of government witnesses and the location of the prosecutor and evidence in finding that the district court did not abuse its discretion by denying a transfer motion); *Cournoyer*, 2012 WL 6539659, at *6 (finding that "the whereabouts of both the defendant's and the government's witnesses is relevant to the question of transfer").

Upon weighing these factors, and in the exercise of the Court's discretion, the Court finds that Flom has not met his burden, and transfer is not warranted.

### A. Location of the Defendant

It is undisputed that Flom resides in the Southern District of Florida, and this factor therefore weighs in favor of transfer. It is true that, "whenever possible," courts should try defendants where they reside. *Spy Factory*, 951 F. Supp. at 456 (citing *United States v. Russell*, 582 F. Supp. 600, 662 (S.D.N.Y. 1984)); *see also United States v. Martino*, No. 00-CR-389, 2000 WL 1843233, at *6 (S.D.N.Y. Dec. 14, 2000) (citing *United States v. Ohran*, No. 99-CR-142, 2000 WL 620217, at *3 (S.D.N.Y. May 12, 2000)) (stating that courts in the Southern District "have accorded greater weight to the defendant's interest in being tried in the district of his residence than to any other factor"). However, this factor is not dispositive, *see Platt*, 376 U.S. at 245–46; *Maldonado-Rivera*, 922 F.2d at 965; *United States v. Riley*, 296 F.R.D. 272, 276 (S.D.N.Y. 2014), *recons. denied*, No. 13-CR-339, 2014 WL 774630 (S.D.N.Y. Feb. 27, 2014), and is largely mitigated where, as here, the trial is expected to be brief.[2] *See United States v. Larsen*, No. 13-CR-688, 2014 WL 177411, at *3 (S.D.N.Y. Jan. 16, 2014) (finding that the defendant's location did not weigh heavily in favor of transfer in a case the government

---

[2] The parties disagree about the likely length of the trial. The government "anticipates concluding its case-in-chief in less than three days," and estimates that "[t]he entirety of the trial is likely to take less than a week." (Mem. in Opp'n at 4.) Flom contends that the defense case "will likely take at least three to four days," and "a more realistic estimate of the trial time in this case would be ten days to two weeks." (Reply (Doc. No. 24) at 5.) Even assuming that defense counsel is correct, a two-week trial is still relatively brief in the context of this factor.

projected to last only three to five days). While Flom's residence in the Southern District of Florida weighs in favor of transfer, it is not determinative.

**B. Location of the Witnesses**

In assessing the location of witnesses on a transfer motion, the effect of a transfer on both government and defense witnesses is considered. *See Stephenson*, 895 F.2d at 875; *Cournoyer*, 2012 WL 6539659, at *6; *Antia*, 1999 WL 294788, at *2.

1. Flom's Witnesses

To meet his burden under this factor, Flom "must offer concrete examples of expected testimony and demonstrate that he is financially incapable of paying the witnesses' travel expenses." *Cournoyer*, 2012 WL 6539659, at *8; *see also Guastella*, 90 F. Supp. 2d at 399; *Spy Factory*, 951 F. Supp. at 457. A "naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer." *Spy Factory*, 951 F. Supp. at 457 (quoting *United States v. Haley*, 504 F. Supp. 1124, 1126 (E.D. Pa. 1981)) (internal quotation marks omitted); *see also United States v. Juncal*, No. 97-CR-1162, 1998 WL 473949, at *5 (S.D.N.Y. Aug. 7, 1998) (holding that without a specific proffer of testimony from specific witnesses, there was no basis to grant a Rule 21(b) motion to transfer). Flom has failed to meet his burden in this regard.

Flom notes that while his "selection of potential defense witnesses remains an evolving process," he has "identified a number of potential defense witnesses by category, and can state with certainty that all of them reside in Southern Florida." (Def. Mot. at 8.) As he argues, Flom expects to call "three to five substantive witnesses – possibly including an expert witness – to refute the prosecution's theory that Mr. Flom engaged in transaction with the necessary intent ...." (Def. Mot. at 8; Reply (Doc. No. 24) at 8.) Flom also previews his intent to "argue for

6

permission to call as many [character witnesses] as the Court will allow," all of whom reside and work in Southern Florida.³ (Reply. at 8–9.)

But Flom does not identify with specificity a single witness – not by name, title, occupation, or otherwise – in either his original motion or his reply. "Experience has taught that on a motion for transfer, the parties often come forward with an extensive list of witnesses that favor their desired venues." *United States v. Hamilton*, No. 98-CR-393 (TPG), 1999 WL 349697, at *1 (S.D.N.Y. May 27, 1999) *see also United States v. Carey*, 152 F. Supp. 2d 415, 422 (S.D.N.Y. 2001). Moreover, Flom attempts to demonstrate hardship to "prominent character witnesses from his home district" by arguing that their "civic responsibilities would be disrupted by travel to a remote district." (Def. Mot. at 9.) However, because Flom has not identified these witnesses, he has failed to demonstrate why they are "prominent" or what "civic responsibilities" they might have. *Cf. United States v. Russell*, 582 F. Supp. at 663 (submitting detailed proffer specifying Mayor of Memphis, a political party leader, and a bar association president and hardships to those witnesses)

Having been taken to task on this point in the government's opposition, Flom offers the following in reply: "Since the government has complained that we have not been sufficiently specific with regard to our witnesses, **we will separately submit, *in camera*, a list of potential witnesses for the Court's review.**" (Reply at 10) (bold and italics in original). Yet, it was not until September 8, 2015, approximately six weeks after filing his reply and on the eve of the next

---

³ Flom originally argued that he will seek to call as witnesses individuals who will "refute the prosecution's theory that Mr. Flom was knowingly and intentionally involved in the illegal activities of Frank Speight." (Def. Mot. at 8.) However, as the government notes, these witnesses are not relevant as the government's case in chief focuses on Flom's efforts to launder money for the undercover agent, not Speight. Indeed, in his reply, Flom does not press this point, suggesting, only in a footnote, that "it may still be necessary to call defense witnesses to testify about [Speight's] activities and his credibility."

7

status conference, that Flom provided the list *ex parte* to the Court.[4]

And even considering the list, Flom has not advanced his argument. Of the dozen names provided, only one is identified as holding a prominent public position – in the past. Six others are identified as professionals or business people, and the rest are wholly unidentified other than by name. Flom specifies that one individual is a "possible substantive witness," and another is a "possible substantive and/or character witness." Flom does not specify the nature of the testimony the others would provide. Granted, all of the witnesses are from Florida, but nothing in these bare-bones descriptions suggest that any of these witnesses, or whatever their responsibilities, be they civic or otherwise, will suffer any hardship such that transfer is warranted.

Flom offers some financial information in support of the contention that Flom "clearly cannot afford the expense of a trial in New York." (Reply at 14–15.) But Flom has not submitted any sworn affidavit or declaration, nor has defense counsel made anything approaching a full and complete disclosure on Flom's behalf such that the Court could conclude that Flom is "financially incapable of paying the expenses of his witnesses." *Spy Factory*, 951 F. Supp. at 456; *see also United States v. Riley*, 296 F.R.D. 272, 276 (S.D.N.Y. 2014) (finding that defendants "have not demonstrated that they are financially incapable of paying the expenses of [their] witnesses, which weighs against transfer" (internal quotation marks omitted)).

In light of this analysis, the "weight of this factor is undermined" by the defendant's failure to specify both the witnesses and the burdens of producing them in New York. *See United States v. Bankas*, 2005 WL 2205340, at 6 (W.D. Wis. Sept. 8, 2005).

---

[4] Flom provided the list to court staff by e-mail on September 8, and filed the list *ex parte* on the docket on October 27, 2015 as the result of an inquiry by court staff. (*See* Doc. Nos. 25, 26 and 26-1.)

2. Government Witnesses

The government expects to call as witnesses the government's case agent and his partner, both of whom are located in New York. The government also expects to call the undercover agent, who has since transferred out of New York and whose current location the government has not identified. Flom argues that "we must assume that the agent will have no difficulty in travelling to the Southern District of Florida." (Reply at 7.) But while it is true that the absence of the undercover agent's location does not weigh in favor of keeping the case in the Eastern District of New York, it also does not counsel in favor of a transfer to Southern Florida. In addition, the government notes that bank records and recordings that will be introduced into evidence are maintained in New York, and to the extent any evidentiary issues arise with respect to that evidence, an employee of the New York office of the Federal Bureau of Investigation ("FBI") or the producing entity would testify for the government.

On balance, the location of witnesses does not weigh in favor of transfer, given defendant's failure to provide concrete examples of witness testimony as well as the hardship of producing witnesses in New York, points on which defendant bears the burden, and when weighed against the presence in New York of a majority of the government's witnesses and evidence.

**C. Location of Events likely to be at Issue**

Because the criminal activity alleged in this case was interstate in scope, with clear ties to both the Eastern District of New York and the Southern District of Florida, the location of events at issue favors neither Flom nor the government. *See United States v. Riley*, 296 F.R.D. 272, 276 (S.D.N.Y. 2014) (finding that where the indictment alleged that defendants caused acts to occur in the Southern District of New York, transfer to California was not appropriate even where

9

many of the acts alleged occurred in California); *Wilson*, 2001 WL 798018, at *2 ("While significant criminal activities are alleged to have occurred in San Francisco, this was not a crime whose planning, execution, or impact was limited by geography."); *Spy Factory*, 951 F. Supp. at 457 (denying Rule 21 motion in spite of defendants' contention that majority of acts and conduct in furtherance of conspiracy took place at corporate headquarters in San Antonio because criminal activity that was alleged to have occurred was concededly national in scope); *see also United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003) (analyzing venue based on substantial contacts test and finding venue proper where defendant "either knew, or could reasonably foresee, that his trades would be executed in the Southern District of New York").

As he notes, Flom was located in the Southern District of Florida throughout his involvement in the alleged scheme, and both face-to-face meetings between Flom and the undercover agent took place in West Palm Beach. But the alleged scheme also heavily implicated the Eastern District of New York. FBI agents, operating covertly, posed as investors from New York, and sent 100% of the funds used in this investigation from TD Bank accounts located in Queens, New York. For example, the first check sent to Flom purported to be from a victim-investor with a home address in Rockville Centre on Long Island. Flom transferred the money, less his fee, to the undercover agent's account at Signature Bank in Queens, New York, and mailed checks and other correspondence to the undercover agent at his "office address" in Kew Gardens, Queens. (Mem. in Opp'n at 10.) As the government aptly notes, "one who uses the mails and wires to acquire the money of persons located in New York by fraud should hardly be heard to complain that he did nothing in New York." (*Id*., citing *United States v. Aronoff*, 463 F. Supp. 454, 459 (S.D.N.Y. 1978).)

10

### D. Location of Documents

Flom acknowledges that the location of documents is no longer a significant factor "given the conveniences of modern transportation and communication." *See* Reply at 11; *Estrada*, 880 F. Supp. 2d at 484; *Martino*, 2000 WL 1843233, at *5. Yet in the same breath, Flom still presses his own need to access his own records located in Florida as a factor that, while not critical, still tilts slightly toward transfer of the case to Florida." (Reply at 11.) As one would expect, the government's documents and evidence are located entirely in the Eastern District of New York, and Flom's documents and evidence are located entirely in the Southern District of Florida. This factor favors neither side.

### E. Potential Disruption of Defendant's Business

Potential disruption to a defendant's business may be a factor favoring transfer, but "a criminal trial invariably 'imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities.'" *United States v. Coriaty*, No. 99-CR-1251, 2000 WL 1099920, at *3 (S.D.N.Y. Aug. 7, 2000) (quoting *U.S. Steel Corp.*, 223 F. Supp. at 156); *see also Spy Factory*, 951 F. Supp. at 458; *Russell*, 582 F. Supp. at 663.

Flom cites concerns in this regard relating to two businesses: (1) a mobile health platform of which he is a co-founder and about which he meets often with the CEO and others "both by telephone and in person," and (2) a "business project, civiliti.org," for which he is a consultant. (Mot. to Change Venue (Doc. No. 21) at 13.) Flom claims that he "will have greater availability to consult on this project" if the case is moved to the Southern District of Florida, and would be able to continue to hold meetings for the mobile health platform during the evenings or on weekends. (*Id.*) The Court is mindful that this factor should be given special consideration when dealing with small or tightly controlled businesses. *See United States v. Aronoff*, 463 F.

11

Supp. 454, 459 (S.D.N.Y. 1978); *United States v. Bein*, 539 F. Supp. 72, 74–75 (N.D. Ill. 1982).

But any obstacles that Flom would face in carrying out his responsibilities to these businesses are little more than the normal burdens that a trial, regardless of location, imposes on a defendant. Modern technology, including phones, e-mail, and other methods of communication, could easily mitigate any concerns. *See Estrada*, 880 F. Supp. 2d at 484 (stating that "modern technology . . . renders this concern minimal," and that any alleged difference in the harm to defendant's business from conducting trial in New York rather than Los Angeles is negligible); *Coriaty*, 2000 WL 1099920, at *3 (finding it unclear why trial time spent in New York would be more harmful to defendant's business than trial time spent in Florida, "particularly . . . in the age of cell phones, email, and fax machines"). This is particularly so here given the fact that Flom currently conducts some of his business by telephone and concedes that he can continue to so do during trial in New York. (*See* Reply at 12.) Moreover, Flom has not demonstrated how either venture would suffer from his absence, particularly for a trial of short duration. Thus, this factor, if it weighs at all in favor of Flom, carries little weight.

### F. Expense to the Parties

In considering expense to the parties, the Court should consider both expense to the defendant if the case were tried in New York, as well as the expense to the government were there a change of venue. *See Guastella*, 90 F. Supp. 2d at 340-41; *see also United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990) (citing location of the prosecutor as a factor in upholding the denial of a Rule 21(b) motion). Certainly, a trial in this district would cause Flom to incur additional expenses. But the focus of this factor is the defendant's ability to pay, not the size of the expense. *See United States v. Valdes*, No. 05-CR-156, 2006 WL 738403, at *7 (S.D.N.Y. Mar. 21, 2006); *United States v. Culoso*, 461 F. Supp. 128, 136 n.12 (S.D.N.Y. 1978);

*see also United States v. Ferguson*, 432 F. Supp. 2d 559, 567 (E.D. Va. 2006); *United States v. Haley*, 504 F. Supp. 1124, 1129 n.32 (E.D. Pa. 1981).

Defense counsel offers some anecdotal details in support of Flom's claim that the trial expenses here would create a severe financial hardship for Flom. (*See* Reply at 14–15 (claiming that Flom "had serious financial problems" even before he was indicted in this case, earns no salary from the two previously mentioned businesses he is associated with, and "has no savings which can be used to pay for . . . the costs of trying this case in New York.").) But Flom has provided no support in the form of affidavits or other evidence of his inability to pay those expenses. "A successful transfer motion requires more than a bald assertion that a trial out of a defendant's home district would be more expensive than if the trial were held in the defendant's home district." *Valdes*, 2006 WL 738403, at *7. Absent a sufficient showing in this regard, the expense to defendant of a trial in New York carries little weight. Moreover, moving this case to the Southern District of Florida would only "shift the [defendant's] economic burden to the government." *Carey*, 152 F. Supp. 2d at 422–23. Thus, this factor does not favor transfer.

### G. Location of Counsel

Flom's counsel, Neal R. Sonnett, maintains his law practice in the Southern District of Florida. However, Mr. Sonnett and his client concede that "we were aware, of course, of the location of the investigation when we assumed this representation." [5] (Mot. to Change Venue at 17.) Given these circumstances, the location of Flom's counsel adds little to the transfer analysis. *Cf. Carey*, 152 F. Supp. 2d at 422 (minimizing this factor where the defendant was aware that a criminal investigation was being conducted in New York and had more than six

---

[5] Flom was represented by a New York attorney, Edward Reagan, during initial proffers with the government in April, 2014, though Mr. Sonnett indicates that he, too, was involved in representing Flom during this period. (*See* Reply at 16.) Curiously, following transfer proceedings in Florida at which he was represented by Mr. Sonnett, Flom was represented by CJA counsel Mitchell Dinnerstein at his arraignment in New York. Mr. Sonnett noticed his appearance here approximately ten days later.

13

months to involve local counsel if he wished); *Antia*, 1999 WL 294788, at *2–3 (discounting this factor where the defendant knew approximately one week after his arrest that charges were pending in New York).

### H. Relative Accessibility of Place of Trial

The Court has already addressed the financial burdens to both sides of holding trial in this district or in the Southern District of Florida. Any additional concerns regarding accessibility of the trial venue are significantly reduced by the "'efficiency of modern air transportation, [which] renders sterile any argument' that one forum is more accessible than the other." *Spy Factory*, 951 F. Supp. at 460 (quoting *U.S. Steel Corp.*, 233 F. Supp. at 158); *see also United States v. Posner*, 549 F. Supp. 475, 479 (S.D.N.Y. 1982) (finding relative accessibility of New York and Miami to be a neutral factor, as "both . . . are well served by air and other public transport"). Thus, this factor is neutral.

### I. Docket Condition of Each District

Both sides agree that "in light of the Speedy Trial Act, docket conditions are of little significance in determining a motion to transfer venue." (Reply at 17.) And despite the Eastern District of New York's busy docket, this Court is more than capable of conducting Flom's trial in a timely fashion. *See Wilson*, 2001 WL 798018, at *3 (finding that this factor did not weigh in favor of transfer where there was "no need to avoid calendar congestion"). Moreover, this Court has presided over this and two other related cases for well over a year, and is fully familiar with their facts and circumstances. Transfer to a new venue and to a new judge will certainly add some delay in moving this case toward trial.

### J. Other Special Circumstances

#### 1. Defendant's Absence from his Family

Flom explains that his children were traumatized when he was arrested at his residence in front of them, and cites the potential "deleterious psychological effect on his children" if he is to be separated from them for the duration of the trial. (Mot. to Change Venue at 22.) But Flom does not explain how an approximately two-week absence, for which Flom could prepare his children and during which he could call them multiple times per day, would cause such extreme psychological impact, nor does he provide any evidence supporting the same. Moreover, as the government notes, Flom requested permission to travel to Ecuador on two separate business trips totaling 16 days. (Mem. in Opp'n at 16.) Flom summarily states that "the government fails to understand the difference between a proposed business trip and a forced appearance for two weeks in a courtroom more than a thousand miles away from the children." (Reply at 20.) The Court, too, fails to recognize any difference, particularly given the fact that Flom's young children need not know the reasons for defendant's fairly brief absence.

#### 2. Defendant's Delay in Moving for Transfer

The government submits that the Court should consider Flom's delay in making this motion, which was filed more than seven months after appearing in the Eastern District of New York. Flom was arrested and arraigned in the Southern District of Florida on September 23, 2014 and an Order of Removal to this district issued on the same date. Flom was arraigned on the indictment in this district on November 3, 2014, and at that time, his initial conference before this Court was set for December 5, 2015. However, upon application of Mr. Sonnett, the Court twice adjourned the initial conference to allow the defendant and his counsel time to review large

15

amounts of information that had been provided in discovery.[6] (*See* Doc. Nos. 15, 16 and 18.) Thus, the initial status conference before this Court did not occur until March 13, 2015. It was at this conference that Mr. Sonnett first indicated that he was considering motion practice, including a motion to change venue. Discovery and plea discussions continued in the interim. At the next conference on May 1, 2015, Mr. Sonnett requested a briefing schedule on a motion to transfer and other issues, and his request was granted, resulting in the instant motion, filed on July 6, 2015.

"One of the factors to which the Second Circuit has paid special attention is a defendant's delay in moving to transfer the case." *Spy Factory*, 951 F. Supp. at 461; *see also Maldonado-Rivera*, 922 F.2d at 966 ("The transfer motion was belated, having been made some nine months after commencement of the prosecution, after discovery was nearly complete, after substantive motions had been filed, and on the eve of the court's setting a date for trial."); *United States v. Keuylian*, 602 F.2d 1033, 1038 (2d Cir. 1979) (finding "the most important factor was appellant's delay in moving to transfer the case"). There has been such delay here.

By his own admission, Mr. Sonnett has been involved consistently in this case since April 2014 when Flom was first confronted by agents, resulting in Flom's proffers with the government. And both he and his client have been aware of the indictment filed in this district, at least since Flom's arrest in Florida in September 2014. Even after appearing in this district in early November, Flom waited another four months to mention the possibility of filing a motion to change venue, and did not request a briefing schedule for another two months. Flom chose to wait to make the motion until he received a considerable volume of discovery – indeed, virtually all of it – and until after the government made – and Flom rejected – post-indictment plea offers.

---

[6] The first request included an additional need based on Mr. Sonnett's recent return to work following surgery. (*See* Doc. No. 15.)

All told, the motion was not filed until eight months after Flom's appearance in this district, and a full ten months after indictment.[7] As the government notes, such delay is even more troubling as the defense was "aware, of course, of the location of the investigation when we assumed this representation, but we also believed that we could provide a strong argument in favor of transfer to the Southern District of Florida." (Def. Mot at 17.) On balance, this delay is an important factor weighing solidly against transfer.

### 3. Judicial Economy

The government also contends that the interests of judicial economy weigh in favor of keeping this case in the same district as *United States v. Schmidt* and *United States v. Speight*, both of which are before this Court, and, to a lesser extent, the parallel civil proceeding brought against Flom by the SEC, which is pending before another judge. The government asserts that all of these cases involve similar schemes and involve the same government prosecutors, FBI agents, and undercover agent, and it would be more economical for one judge to handle those cases. The Court agrees. This factor, coupled with locus of events in this and the related cases and their impact on the district as discussed above, provides additional support for keeping the case in the forum in which it was filed.

## II. Assessment of *Platt* Factors

As discussed above, the vast majority of the *Platt* factors that favor transfer carry little weight, and many others are neutral. And even those factors that augur in favor of transfer are largely mitigated by the estimated brief duration of the trial – even by Flom's own measure – its length is likely capped at two weeks. While the Court is cognizant of the potential burden on Flom of being away from home for that period of time, it is not sufficient to "show that trial here

---

[7] In addition, as noted earlier, even after his motion was fully briefed, Flom waited another six weeks, until September 8, 2015, to request to supplement his motion with an *ex parte* filing identifying the witnesses he intends to call at trial. (*See* Doc. No. 25.)

17

would be so unduly burdensome that fairness requires the transfer." *U.S. Steel Corp.*, 233 F. Supp. at 157; *see also Stephenson*, 895 F. 2d at 875 (affirming denial of motion to transfer even where several considerations weighed in favor of another district); *Estrada*, 880 F. Supp. 2d at 486 (denying motion to transfer even where a number of factors weighed in favor of doing so). Moreover, there a strong nexus to and impact on New York through the evidence and witnesses in this case that supports keeping the case in the district in which it was filed, a factor amplified by the issues of judicial economy borne of the related cases. And the delay in bringing this motion is another strong factor that militates against transfer.

Simply put, Flom has not overcome the presumption in favor of retaining this criminal prosecution in the district in which it was initiated. For the reasons herein, the motion to change venue to the Southern District of Florida is denied.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
       October 27, 2015    _____
                                                             ROSLYNN R. MAUSKOPF
                                                             United States District Judge